UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| SHAWN PATTERSON, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 13-1121 |
| MATT BAKER, RAUL MARTINEZ, and TODD FREDRICKSON, | ) |
| Defendants. | ) |

## MEMORANDUM ORDER AND OPINION

This matter is now before the Court on Plaintiff Shawn Patterson's ("Plaintiff") combined Motion for Judgment as a Matter of Law and a New Trial (ECF No. 267). For the reasons set forth below, the motions are DENIED and the jury verdict STANDS.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff claimed that Baker, Fredrickson, and Martinez assaulted him by slamming his head and continuously punching him on his back and sides on February 7, 2012, and that Fredrickson assaulted him again on February 9, 2012. (ECF No. 11 at 13, 14). On May 13, 2019, a two-day jury trial was held in this case regarding Plaintiff's claims under 42 U.S.C. §1983 for violations of the Eighth Amendment. At the time of trial, Plaintiff was an inmate in the custody of the Illinois Department of Corrections housed at Pontiac Correctional Center. Defendants Matt Baker ("Baker") and Raul Martinez ("Martinez") were correctional officers from Hill Correctional Center, while Defendant Todd Fredrickson ("Fredrickson") (collectively "Defendants") was a sergeant. During trial, Plaintiff also moved for Judgment as a Matter of Law prior to the case being submitted to the jury, pursuant to Fed. R. Civ. P. 50(a), which the Court denied. On May 14, 2019, the jury returned a verdict in favor of Defendants. (ECF No. 260).

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 50 provides judgment as a matter of law where "a reasonable jury [lacks] a legally sufficient evidentiary basis to find for the [prevailing] party[.]" FED. R. CIV. P. 50(a). In weighing a Rule 50 motion, "the question is simply whether the evidence as a whole, when combined with all reasonable inferences permissibly drawn from that evidence, is sufficient to allow a reasonable jury to find in favor of the plaintiff." *Hall v. Forest River, Inc.*, 536 F.3d 615, 619 (7th Cir. 2008) (citing *Hossack v. Floor Covering Assoc. of Joliet, Inc.*, 492 F.3d 853, 859 (7th Cir. 2007)). A jury's determination may be overturned only if "no rational jury could have found for plaintiff," and there must also be more than "a mere scintilla of supporting evidence." *Walker v. Bd. of Regents of Univ. of Wisconsin Sys.*, 410 F.3d 387, 393 (7th Cir. 2005) (quoting *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1173 (7th Cir. 2002)). The court must "not make credibility determinations or reweigh the evidence," and "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Tart v. Illinois Power Co.*, 366 F.3d 461, 472 (7th Cir. 2004).

Under Federal Rule of Civil Procedure 59(a), "[a] court may only order a new trial if the jury's 'verdict is against the manifest weight of the evidence, ... or if for other reasons the trial was not fair to the moving party.'" *Marcus & Millichap Inv. Servs. v. Sekulovski*, 639 F.3d 301, 313 (7th Cir. 2011). "In ruling on a motion for a new trial, the judge may consider the credibility of witnesses, the weight of the evidence, and anything else which justice requires." *Bob Willow Motors, Inc. v. Gen. Motors Corp.*, 872 F.2d 788, 798 (7th Cir. 1989) (internal citation omitted).

**ANALYSIS**

**I.   Judgment as a Matter of Law**

Plaintiff contends that no reasonable juror would have believed Defendants' "made-for-

trial" testimony, because their discovery responses indicated they did not recall the incident with Plaintiff, and it was not until after Defendants' counsel provided them with documents in preparation for trial that they recalled the incident. (ECF No. 267 at 2). According to Plaintiff, Defendants were served with interrogatories in 2014, where they all responded by stating they did not recall the alleged events of February 7, 2012. (ECF No. 257; Pl.'s Ex. 5). In late 2017 and early 2018, Plaintiff served a second set of interrogatories upon Defendants where they similarly responded that they did not recall having any physical contact with Plaintiff on February 7, 2012, or February 9, 2012. *Id;* Pl.'s Exs. 1, 3. Defendants claim that counsel has a right to provide his clients with records in preparation for trial and that these documents were used to refresh the recollection of Defendants at trial.

During trial, Defendants recalled what occurred and testified as much. (ECF No. 264 at 47 – 52). Specifically, Martinez testified to the following set of events. While performing a count in Plaintiff's wing on February 7, 2012, he saw Plaintiff's cell door window covered with paper. *Id.* at 48. Plaintiff was also naked at the time and acting animated. *Id.* at 48, 51. Martinez testified that he gave Plaintiff three direct orders to remove the paper so he could complete his count, but Plaintiff refused. *Id.* Thereafter, Martinez called Frederickson, his supervisor, to handle the situation. *Id.* at 49. Frederickson allegedly also gave direct orders for Plaintiff to remove the paper from the window, which he refused to do. *Id.* Baker was also present at this time and stood at the cell door with Martinez. *Id.* at 51. Fredrickson restrained Plaintiff because Plaintiff refused to remove the paper. *Id*. Defendants then took a sheet or blanket to cover Plaintiff and walked him over to the segregation holding cell. *Id.* at 52.

A review of the transcript from trial reveals that Defendants were shown documents to refresh their memories. (ECF No. 264 at 46 – 47). For example, when Martinez was testifying, he

was shown a disciplinary report, and after reading it out loud, he recalled the incident. *Id.* at 47 – 49. When Plaintiff objected to the testimony as hearsay, the Court overruled it. *Id.* at 49 – 50.

The Federal Rules of Evidence allow for a witness to use a writing in order to refresh his memory for the purpose of testifying. FED. R. EVID. 612. As the record confirms, Defendants' counsel properly used documents to refresh the recollection of Defendants at trial. Moreover, the Joint Proposed Final Pretrial Order included all the documents that could be shown at trial. (ECF No. 249). Defense counsel can provide witnesses with documents during trial preparation, especially if it will help them recall an event when called to testify. *See* FED. R. EVID. 612. These documents were also exchanged during discovery. (ECF No. 276 at 7). Accordingly, the Court finds that documents were not improperly used to refresh Defendants' recollection during trial, and Defendants not providing similar responses to discovery requests had no bearing on the testimony.

Moreover, Plaintiff is not entitled to judgment as a matter of law as the record demonstrates a sufficient evidentiary basis for a reasonable jury to have found for Defendants. Although Plaintiff presented evidence that Defendants used excessive force though testimony and some of the contents of the injury report drafted by Nurse Brenda Aldridge ("Aldridge"), it was up to the jury to determine credibility to resolve contradictory evidence. In this matter, the jury construed Defendants' evidence to be more credible, and it is not the province of the Court to substitute its view of the contested evidence for the jury's where the jury's findings were reasonable. "[T]he jury is the body best equipped to judge the facts, weigh the evidence, determine credibility, and use its common sense to arrive at a reasoned decision." *Massey v. Blue Cross-Blue Shield of Illinois*, 226 F.3d 922, 925 (7th Cir. 2000). "Overturning a jury verdict is not something [the courts] do lightly." *Id.* The Court finds that the evidence presented at trial, combined with all reasonable

inferences permissibly drawn therefrom, was sufficient to support the verdict. Accordingly, Plaintiff's Motion for Judgment as a Matter of Law is DENIED.

## II. New Trial

### a. The Manifest Weight of the Evidence

Plaintiff contends that the weight of the evidence was against the verdict in this case. Plaintiff's brief argument merely points back to his assertions that Defendants' testimony was implausible due to the "stark difference between Defendants' interrogatory responses and in-court testimony." (ECF No. 267 at 10). Plaintiff also assumes that Defendants should have reported his animated behavior, while naked, to a mental health professional. Plaintiff then concludes that based on these reasons, Defendants' testimony should not be believed. Defendants argue that their trial testimony should not have surprised Plaintiff because their testimony was not inconsistent with the information that had been provided in documents in response to Plaintiff's discovery requests.

When deciding whether a rational jury could have rendered the contested verdict, the Court views the evidence in the light most favorable to the non-moving party and does not make judgments as to the credibility or weight of the evidence presented. *King v. Harrington*, 447 F.3d 531, 534 (7th Cir. 2006). The Court will sustain the jury's verdict "where a 'reasonable basis' exists in the record to support the outcome." *Id.* (quoting *Kapelanski v. Johnson*, 390 F.3d 525, 530 (7th Cir. 2004)). Conversely, "a new trial should be granted 'only when the record shows that the jury's verdict resulted in a miscarriage of justice . . . or shocks [the] conscience.'" *Davis v. Wis. Dep't of Corr.*, 445 F.3d 971, 979 (7th Cir.2006) (quoting *Latino v. Kaizer*, 58 F.3d 310, 314 (7th Cir. 1995)).

Here, the jurors were presented with two portrayals of the incident and were entitled to believe either side. Plaintiff testified at length about his version of what happened to him on February 7, 2012, and February 9, 2012. (ECF No. 264 at 9 – 37). Plaintiff testified to the following version of events. On February 7, 2012, while he was sitting in his cell writing a letter, Defendants visited him. *Id.* at 18. According to Plaintiff, Fredrickson snatched him from his bed, threw him on the floor, and slammed him against the floor a couple of times. *Id.* Plaintiff further testified that Frederickson placed his knees on his neck and ordered Baker and Martinez to hit him on his back and sides. *Id.* at 20 – 22. Defendants then allegedly stripped Patterson and handcuffed him. *Id.* at 22. Plaintiff further testified that on February 9, 2012, Fredrickson entered his cell early in the morning before count and started beating him again, because Plaintiff was a "headache to his staff." *Id.* at 24 – 25.

In contrast, Aldridge also testified as to the contents of her injury report after she examined Plaintiff. *Id.* at 37 – 42. At trial, Aldridge read the report, which included a summary of Plaintiff's account of the events and noted a soft tissue injury that was treatable with Advil. (ECF No. 71-5). *See Lunsford v. Bennett*, 17 F.3d 1574, 1582 (7th Cir. 1994) (degree of injury is relevant to determining extremeness of force used; a "minor injury" supports a conclusion of "a de minimis use of force not intended to cause pain or injury"). As noted above, Martinez's account of the events that transpired were different. Given this conflicting testimony, none of which "contradicts indisputable physical facts or laws," the jury had a reasonable basis to find that the Defendants had not used excessive force. *Mejia v. Cook Cty., Ill.*, 650 F.3d 631, 633 (7th Cir. 2011).

After reviewing all of the evidence presented at trial, the Court finds that this is not a case in which "no rational jury could have rendered the verdict." *Moore ex rel. Estate of Grady v. Tuelja,* 546 F.3d 423, 427 (7th Cir. 2008). As the Seventh Circuit has reiterated, "[o]nly when the

verdict is contrary to the manifest weight of the evidence should a motion for a new trial challenging the jury's assessment of the facts carry the day." *Mejia,* 650 F.3d at 633. To the extent there was any conflicting testimony regarding the facts, the Court defers to the jury's determination. *Willis v. Lepine*, 687 F.3d 826, 837 (7th Cir. 2012). Because the verdict was not against the manifest weight of the evidence, the Court declines to grant Plaintiff a new trial on this basis.

### b. Fairness of Plaintiff's Trial

A motion for a new trial may be granted if "the trial was not fair to the party moving." *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940). The right to a fair trial applies in both civil and criminal cases. *Illinois v. Allen*, 397 U.S. 337 (1970); *see also Lemons v. Skidmore*, 985 F.2d 354, 357 (7th Cir. 1993). In civil cases involving prisoner-plaintiffs, the Court must sustain this right to a fair trial, difficult though it may be. *Lemons*, 985 F.2d at 357 (generally discussing prisoner plaintiffs' appearance in court while shackled). Furthermore, "civil litigants are entitled to a fair trial, not a perfect one, and … a new trial will not be ordered unless there was an error that caused some prejudice to the substantial rights of the parties." *Id.*

### i. *References to Plaintiff's Underlying Felony Conviction*

Plaintiff argues that Defendants made prejudicial references to his underlying felony conviction during trial. Specifically, he argues, these references were made during the opening statement when Defendants referred to Hill Correctional Center as a medium-security prison, (ECF No. 264 at 3) and again during Plaintiff's cross-examination when Defendants asked if he was found guilty of a Class X felony and Plaintiff answered in the affirmative. *Id.* at 36. Plaintiff contends that because the jury heard these references, the damage had been done, regardless of the Court sustaining Plaintiff's objections, and that he is entitled to a new trial as a result. Defendants

7

contend that Plaintiff has not provided any support in their argument that the jury was affected by hearing Plaintiff was convicted of Class X felony, and that his assertion is nothing more than mere speculation.

When Plaintiff objected to the opening statement where Defendants mentioned a medium-security prison, the Court conferred with the parties and ordered Defendants to no longer reference that Plaintiff was housed at a medium-security prison throughout trial. *Id.* at 6-9. Then, when Defendants asked Plaintiff if he was found guilty of a Class X felony, and Plaintiff responded in the affirmative, the Court gave curative instructions to the jury to disregard the testimony. *Id.* at 37. It is not an abuse of discretion for the trial judge to issue a curative instruction after improper testimony is adduced at trial, so long as the instruction adequately addresses that aspect of the testimony which was improper or permitted an improper inference. *United States v. Scott*, 19 F.3d 1238, 1244 (7th Cir. 1994). The law presumes that a jury will follow the Court's instruction. *Richardson v. Marsh*, 481 U.S. 200, 208 (1987); *see United States v. Henry*, 2 F.3d 792, 796 (7th Cir.1993).

Likewise, references to Plaintiff's underlying conviction under these circumstances does not constitute prejudicial error. *See United States v. Lomeli*, 76 F.3d 146, 149 (7th Cir. 1996) (finding no prejudice when court ordered government to instruct its witnesses not to mention defendant's prior conviction; however, witness was asked question indicating there was a prior conviction and court instructed jury to disregard testimony); *see also United States v. Dorn*, 561 F.2d 1252, 1257 (7th Cir. 1977), *rev'd on other grounds, United States v. Read*, 658 F.2d 1225 (7th Cir. 1980). Before trial, the Court also ordered that "Defendants may only reference Plaintiff's felony conviction without identifying the specific offense." (ECF Minute Entry 5/8/2019). Accordingly, the jury knew that Plaintiff was convicted of a felony. While the parties were aware

of what was prohibited from being referenced during trial, unfortunately, the Court cannot predict an attorney's live statements or questioning during direct and cross-examination. If a party chooses to disregard a previous ruling regarding what is permissible or prohibited during trial, the Court can offer instructions to the jury to disregard the action. We must presume that juries are capable of sorting through the evidence and following a court's instructions. *Opper v. United States,* 348 U.S. 84, 95 (1954); *United States v. Hanson*, 994 F.2d 403, 408 (7th Cir. 1993). The Court finds that these references did not have a prejudicial effect on the jury due to the fact that the case was related to whether unconstitutional excessive force was used against Plaintiff and not about what kind of offender Plaintiff was. Considering the cumulative evidence presented at trial and no witnesses that testified to Plaintiff's version of events, the jury had a reasonable basis to find for Defendants. Plaintiff is not entitled to a perfect trial, but rather a fair one. The Court finds the trial was fair in this matter and therefore declines to grant Plaintiff a new trial on this basis.

ii. *Evidence of a Lawsuit Filed Against Martinez*

Plaintiff argues the Court erred when it denied his request to impeach Martinez by questioning him about similar allegations in an ongoing, separate lawsuit. During trial, Plaintiff asked Martinez if he ever paraded an inmate down a gallery naked, which Martinez denied. (ECF No. 264 at 83-84). Plaintiff sought to impeach Martinez by addressing an ongoing lawsuit where Martinez had been accused of making another inmate walk down a gallery naked. *Id.* at 92-93; *Price v. Dorethy,* No. 4:17-4301 (C.D. Ill. 2017) (ECF No. 1 at 7). However, the Court denied this request stating concerns that under Federal Rule of Evidence 403, it would be prejudicial, because the lawsuit merely included allegations where no findings have been made yet. (ECF No. 264 at 93). The Court also made the same determination in granting Defendants' Motion in Limine No. 2 and ordered that no reference be made regarding other lawsuits involving any of the Defendants.

(ECF Minute Entry 5/8/2019). Defendants assert that such evidence was inadmissible under Federal Rule of Evidence 608(b). The Court stands by its decision.

Under Rule 608(b), "[s]pecific instances of the conduct of a witness" other than conviction of a crime are not broadly admissible to attack a witness' credibility (and may not be proved by extrinsic evidence). FED. R. EVID. 608(b). Rather, such instances of misconduct may "in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness ... concerning the witness' character for truthfulness or untruthfulness." *Id.*; *United States v. Veras*, 860 F. Supp. 471, 478 (N.D. Ill. 1994), *aff'd*, 51 F.3d 1365 (7th Cir. 1995). Even if Plaintiff could get around Rule 608(b), evidence may always be excluded under Rule 403 "if its probative value is substantially outweighed by the danger of … unfair prejudice, confusing the issues, [or] misleading the jury…" FED. R. EVID. 403; *see also United States v. Saunders*, 166 F.3d 907, 1999 WL 44345, at *11 (7th Cir. 1999) (noting the probative value of Rule 608(b) evidence "must still outweigh the danger of unfair prejudice, confusion of the issues, or misleading the jury"); *First Weber Group, Inc. v. Horsfall,* 738 F.3d 767, 778 (7th Cir. 2013) ("[t]he rule is permissive, not mandatory, leaving the court with great discretion."). Given that the ancillary lawsuit against Martinez was still ongoing, the probative value of introducing collateral allegations at trial was substantially outweighed by the danger of unfair prejudice as well as misleading confusing or misleading the jury. Accordingly, the Court denies Plaintiff's motion on this ground.

iii. *Impermissible Expert Testimony*

Plaintiff argues that by Aldridge impermissibly testifying as to what injuries she would have expected to see as a result of Plaintiff's allegations, she crossed the line into expert testimony. Plaintiff also contends that Defendants conceded that Aldridge would be testifying as an expert

when they stated she "would be considered an expert because she did evaluate him and is a medical professional" after asking her to opine on the injuries. (ECF No. 263 at 3). Defendants counter by stating Aldridge did not provide expert testimony and remained a fact witness throughout trial as she only testified to facts specifically related to Plaintiff's injuries and the treatment that she personally provided.

It is true that Aldridge was not disclosed as an expert witness, but rather a fact witness. (ECF No. 253). Even though Defendants stated that Aldridge would be considered an expert for a specific question, the Court finds any error in allowing that testimony was harmless. *Alverio v. Sam's Warehouse Club*, 253 F.3d 933, 942 (7th Cir. 2001) ("even if a judge's rulings are found to be erroneous, they may be deemed harmless if the record indicates that the end result of the trial would have remained unchanged.").

During trial, when Defendants asked Aldridge "and for an injury - for instance, this one, it happened the day before, would you anticipate that there would be signs?," the Court allowed Aldridge to answer "with what the inmate complained of, there would have been possibly…bruising, some redness." (ECF No. 263 at 3-4). Allowing this testimony would not have changed the jury's verdict, because without it, the jury still knew that Plaintiff did not have any visible bruising. According to Aldridge's injury report, which was read out loud to the jury and entered into evidence, it stated that her objective findings included:

> Left side of neck - self-reported pain with turning head to the right. Left side of back - *no visible signs and symptoms.* Inmate self-reports complaints of pain with turning or bending. Left side hurts worse than right. Complaints of pain at level 6. Wrists have small scrapes, inner and outer wrists. Left ankle self-reported painful with movement *but no swelling or discoloration.*

(ECF No. 264 at 39-40) (emphasis added). Clearly, by the report alone the jury knew that Plaintiff had not appeared with any physical injuries. Therefore, the error, if any, of allowing Aldridge to

11

testify regarding Plaintiff's injuries, and having Defendants refer to her as an expert in that instance, was harmless because it did not have a substantial and injurious effect, or influence on the determination of the jury. *See Cerabio LLC v. Wright Med. Tech., Inc.*, 410 F.3d 981, 994 (7th Cir. 2005). Accordingly, the Court declines to grant Plaintiff a new trial on this basis.

 *iv. Court's Heck Instruction*

Lastly, Plaintiff contends that the Court erred in composing and issuing its *Heck* instruction to the jury that stated:

> It has previously been determined that Mr. Patterson covered up the window of cell number OR 18 with paper on February 7, 2012, and that Mr. Patterson refused to remove the paper after he was given 3 direct orders, so that count could be completed. Any statement to the contrary by Mr. Patterson must be ignored.

(ECF No. 266 at 17). Plaintiff argues that including this *Heck* instruction was highly prejudicial, because the Court was impeaching Plaintiff by highlighting an inconsistency in his testimony. Defendants claim that the *Heck* instruction was proper, because Plaintiff attempted to testify in contravention to the findings of the Adjustment Committee with respect to his ticket for "impairment of surveillance."

This issue was discussed at length during jury instruction deliberation before the Court. (ECF No. 264 at 6-17). Plaintiff offers no novel support for his position that the Court has not already ruled on. In order to succeed on his motion requesting a new trial because of an erroneous jury instruction, Plaintiff "must establish both that the instruction[] failed to properly state the law and that he was prejudiced by the error because the jury was likely to be misled or confused. *Rapold v. Baxter Int'l Inc.,* 718 F.3d 602, 609 (7th Cir. 2013), *as amended on denial of reh'g and reh'g en banc* (June 3, 2013). Here, because the Court's instruction properly stated the law, the Court denies this basis for a new trial.

During Plaintiff's disciplinary hearing, he was charged with "impairment of surveillance," an offense consisting of "using curtains, cell coverings, or any other matter or object in a manner that obstructs or otherwise impairs the line of vision into a committed person's cell." (ECF No. 267-1). At trial, Plaintiff testified that he took down the paper that was covering his cell door. (ECF No. 264 at 17). However, the Adjustment Committee had found Plaintiff guilty because he had admitted to having his window covered up and refused to remove the paper. (ECF No. 276-3). Therefore, this Court was faced with a circumstance addressed in *Heck v. Humphrey*, 512 U.S. 477 (1994), which prohibits plaintiffs from pursuing civil claims where a judgment in their favor "would necessarily imply the invalidity of [their] conviction[s]." *Id.* at 485-86. *Heck* holds that a plaintiff in an action under 42 U.S.C. § 1983, may not pursue a claim for relief that implies the invalidity of a criminal conviction, unless the conviction has been set aside by appeal, collateral relief, or pardon. *Id.* at 487. Accordingly, the Court properly implemented a *Heck* instruction to the jury. *See Gilbert v. Cook,* 512 F.3d 899, 902 (7th Cir. 2008). The Court's instruction was tailored to be consistent with the Adjustment Committee's findings and was therefore proper. *See id.* at 900-02. The Court's echoing of the findings was an appropriate way to inform the jury on the underlying facts of the incident. Therefore, Plaintiff's motion for a new trial is denied on this basis.

## CONCLUSION

For the reasons stated above, Plaintiff's combined Motion for Judgment as a Matter of Law and a New Trial [267] is DENIED.

ENTERED this 3rd day of September, 2019.

                                            /s/ Michael M. Mihm
                                              Michael M. Mihm
                                          United States District Judge